[S. F. No. 6253.    Department One.—October 11, 1915.]

WILLIAM B. GRAY, Respondent, v. PACIFIC SUCTION
CLEANER COMPANY, a Corporation, Appellant.

EMPLOYER AND EMPLOYEE—DISCHARGE—GOOD FAITH OF OFFER OF RE-
EMPLOYMENT.—In this action by an employee to recover damages
for his alleged wrongful discharge from service under a contract of
employment for a stated period, the evidence sustains the finding
that an offer of the defendant to reinstate the plaintiff in his em-
ployment, and pleaded in mitigation of damages, was not made in
good faith.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order refus-
ing a new trial.    George H. Cabaniss, Judge.

The facts are stated in the opinion of the court.

Bishop, Hoefler, Cook & Harwood, L. M. Hoefler, and
Finlay Cook, for Appellant.

Wm. M. Cannon, and T. C. Judkins, for Respondent.

SHAW, J.—The plaintiff sued to recover damages for his
alleged wrongful discharge from service under a contract
whereby the defendant employed him for one year, beginning
February 1, 1909, at $250 a month, payable at the end of
each month.    The findings, in effect, state that the plaintiff
was wrongfully discharged on June 9, 1909, that his salary
had been paid up to the end of May, 1909, that plaintiff had
obtained other employment during the remainder of the
year from which he received one thousand dollars, and that
he was entitled, as damages, to the difference between the
agreed salary for the eight months, and the one thousand
dollars received from the other employment, together with
interest on the balances for each month.    Judgment was ac-
cordingly given in his favor for the sum of one thousand
dollars and $138.70 interest.    The defendant appeals from
the judgment and from an order denying its motion for a
new trial.

In its defense the defendant undertook to prove, in miti-
gation of damages, that on June 19, 1909, it offered to take

plaintiff back in its service, under the contract aforesaid, and to allow the salary to continue as from June 1, 1909, and that the plaintiff refused to accept said offer. The claim is that this offer and refusal defeats the right of plaintiff to recover anything more than nominal damages for the technical breach.

The findings state that "it is not true that the defendant ever in good faith requested or notified plaintiff to resume his duties in the service or employment of said defendant." This, if correct, would defeat the attempt to mitigate the damages by the offer of re-employment. The defendant claims that the finding is contrary to the evidence.

The evidence on the subject is altogether inferential and circumstantial, but, upon the whole case, we cannot say that the finding was not justified by the evidence. When the contract was made, one John Lee, Jr., was president of the company and the principal stockholder therein. It was at his instance that the plaintiff was employed. He was in the active management of the company for the ensuing two months, and during that period the plaintiff's salary was promptly and regularly paid. Some time in April, Lee disposed of part or all of his stock and ceased to control the company's affairs, although he remained president until about June 1st. In the meantime the company was managed and controlled by Otto H. Mohr. At the end of April the plaintiff was given a check for his April salary, which, at his request, was made payable to one Roeder. The check was dishonored, plaintiff had to make it good, and was subsequently reimbursed by Lee. The company paid only one hundred dollars of the May salary, and thereupon, about June 8th, the plaintiff began an action for the recovery of the remaining one hundred and fifty dollars, and caused an attachment to issue thereon against the company. The next day he was discharged without cause. Two days afterward he began this action for damages for the wrongful discharge. Lee resigned as president and disposed of his stock therein to Mohr about the 1st of June. Upon the issuing of the attachment, and knowing himself to be personally liable for a part of the debt, Lee immediately repurchased the stock from Mohr and again became the president of the company and took the active management thereof, and paid the attachment claim. On June 18th he wrote to plaintiff asking him to

call at the company's office. The plaintiff called on June 19th, whereupon Lee declared that he had never been discharged and asked him to resume his place as an employee of the company. The negotiations then took the form of letters between plaintiff and the defendant, Lee conducting the correspondence of the defendant. Five letters passed between them. In his letter of June 19th, Gray, after stating that the failure to pay his salary was sufficient cause for him to leave the defendant's service, and that his discharge was without cause, stated his position as follows:

"I am willing to waive the breach of my contract of employment with you, and report promptly for duty provided you give me satisfactory security for the payment of my salary when due. You can readily understand that I cannot waive any rights I now have, and still have constant difficulty in obtaining my salary when earned. . . . Otherwise I will stand on my rights and endeavor to enforce my suit against you. . . . Your company has in many other ways failed to·live up to the letter and spirit of my contract of employment, but I deem it unnecessary to mention them here."

To this, on June 23d, the company answered as follows:

"The company's position is this: That you have never been discharged from your employment, and that your contract for services is in full force and effect, and notwithstanding the fact of your having secured the contract under representations which will not appeal to the court, we are perfectly willing to waive that defense and have you report and perform your duty as an employee of the company. If you will do so we do not ask you to waive any rights that you ever had, and expressly agree that your original contract has not been terminated. While there would ordinarily be no objection to secure the payment of your salary under the contract, we will not, as a matter of principle, permit you, our employee, to dictate any new terms of employment. This you may consider as a final refusal on the part of this company to comply with the new terms of employment which you now believe you can impose, but nevertheless, and notwithstanding the large expense to which you have subjected this company, we will say that while we cannot accept your proposal to resume your duties upon the conditions mentioned in your letter, your ᐧposition is still open to you under the terms of

your original employment.   We make this proposition in good
faith, and if you refuse it we shall, of course, be obliged
to secure the judgment of the court as to the duties of an
employee under the facts which will be disclosed on the trial
of the case.''

On the 28th, Gray replied that he had no fear of any de-
fense the company might have growing out of any repre-
sentations he had made, that he did not care to resume em-
ployment from which he had been discharged if he should be
required to sue monthly for his salary, reiterating his demand
for security and stating that he understood the proposition
of the company in its letter of June 23d to be ''that I shall
resume my duties with your company, waiving the breach
of contract created by my discharge, and take the chances
of collecting my salary when due.   This proposition I
refuse.''

In the next letter, on July 2d, the company stated that
plaintiff well knew that Lee was now in control of all the stock
and was amply able financially to pay the salary when due,
and that in view of this fact ''we cannot but look upon the
reasons for your refusal to resume your duties with this com-
pany under your contract, which is still in full force and
effect, as a subterfuge.   You are wholly mistaken when you
assume or pretend to understand our letter of June 23, 1909,
as requesting on your part a waiver of the breach of con-
tract claimed by you.   We expressly now state that we do
not care to have you waive any rights that you ever had or
now have as an employee of the company, but we do demand
that you immediately resume your employment under your
contract and that you discharge your duties required of you
thereunder.''   The final letter was written by Gray on July
7th, in which he declined to resume service under the contract
unless he had additional security for his salary.

It is to be observed that all this occurred after the action
was begun.   The contents of the letters of the defendant in-
dicate that they were prepared either by the attorneys for
the defendant or under their direction.   The correspondence
and the circumstances shown in the evidence justify the in-
ference that the defendant was much more desirous of laying
a foundation for a mitigation of damages in the suit than
of taking the plaintiff back into its service.   The motive is, of
course, apparent.   A reasonable person would easily perceive

that the continuance of Gray in the service of the company after the occurrences leading up to the beginning of the action would most probably be disagreeable and undesirable to both parties and would necessarily cause friction between them. Without further discussion we think it sufficient to say that upon all the evidence the court was justified in drawing the conclusion that the offer was made in bad faith, and that the finding to that effect is supported by the evidence. It is, therefore, unnecessary to consider the additional questions whether or not the offer as made covered an agreement by the company to reimburse the plaintiff for his costs in the action, if he should resume employment, or whether it was sufficiently clear in that respect. Its apparent ambiguity on that point is one of the circumstances tending to show bad faith.

The judgment and order are affirmed.

Sloss, J., and Lawlor, J., concurred.

Hearing in Bank denied.